UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:19-CR-00764-JAR-3 |
| SURRAYAH HILL, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Surrayah Hill's pro se motion seeking sentence reduction and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 (Doc. 208), as well as Defendant's pro se motion for relief relating to Amendment 821 (Doc. 213). For the following reasons, both motions will be denied.

### BACKGROUND

In January 2022, Defendant Surrayah Hill pled guilty to one count of Aiding and Abetting in the Commission of an Attempted Carjacking Resulting in Death in the Eastern District of Missouri (Doc. 172). While Hill did not personally engage with the victims of the attempted carjacking, she recruited Co-Defendant Keombra James into the conspiracy and acted as the getaway driver. In May 2022, Hill was sentenced to 132 months in prison and three years of supervised release (Doc. 187). Hill is currently incarcerated at Tallahassee FCI in Florida with a projected release date of March 4, 2029. She is 27 years old.

On November 7, 2024, Hill filed a pro se motion asking the Court to reduce her sentence and for compassionate release, citing serious medical conditions and family circumstances, among other factors (Doc. 208). In her memorandum in support of the motion, Hill details how she suffers

1

from sickle cell anemia and obesity, and states that she has an increased risk of severe complications from COVID-19 (Doc. 209). Further, Hill alleges that the caregivers of her four children are facing various issues: Hill's 10-year old daughter, whose father is deceased, is living with her grandmother who is a borderline diabetic and has problems supporting herself on a limited income; Hill's 5-year old daughter is living with Hill's mother, who has mental health problems (allegedly spent months in a mental health facility) and suffers from serious depression; and Hill's other two children are living with their father's mother who is 55 years old and is overwhelmed by Hill's son who is autistic and must take medication. For these and other grounds including alleged harsh prison conditions, Hill contends that there are extraordinary and compelling reasons for this court to grant a reduction in sentence to time served, and, if deemed necessary, to modify the supervised release term to include home confinement. On December 2, 2024, the Federal Public Defender filed a notice of intent not to file a supplemental motion (Doc. 212). On August 11, 2025, Hill submitted a supplemental filing in support of her motion, comprising several Federal Bureau of Prisons ("BOP") records and her PATTERN assessment (Doc. 217).

On June 9, 2025, Hill filed a pro se motion for relief relating to Amendment 821 (Doc. 213). The Federal Public Defender again filed a notice of intent not to file a supplemental motion (Doc. 214). Hill's subsequent amendment to the motion focuses on the increasing mental instability and financial distress of her mother (Doc. 216). Hill states that her mother is not able to care and provide for her daughter properly and cannot last another three years raising her child. Hill asserts that she needs to be at home with her four children, specifically citing her autistic son. In addition to her family needs, Hill alleges that she is facing harsh conditions in prison. Despite her hardships, however, she states that she has obtained a G.E.D. and desires to be released from prison so she can give back to her community.

**LEGAL STANDARDS**

**First Step Act**

The First Step Act, passed in 2018, allows an incarcerated individual to bring his own motion for compassionate release if he has exhausted his administrative appeals or after the warden of his facility receives the request and does not respond within 30 days. Pub. L. No. 115-391, 132 Stat. 5194, § 603(b). Aside from allowing defendants to bring their own motions, the First Step Act did not change the standards for compassionate release. *United States v. Vangh*, 990 F.3d 1138, 1140 (8th Cir. 2021). Relief is available where the proposed sentence reduction is supported by: (1) "extraordinary and compelling reasons," (2) applicable policy statements issued by the Sentencing Commission, and (3) the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). As relevant here, "extraordinary and compelling reasons" include: (1) a terminal illness such as end-stage organ disease; (2) a serious medical condition that substantially diminishes a defendant's ability to provide self-care in the facility and from which he is not expected to recover; and (3) a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration or death. U.S.S.G. § 1B1.13(b)(1).

The second requirement – that the reduction is consistent with Sentencing Commission policy – focuses on community safety. The Guidelines provide that compassionate release is only appropriate when the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Relevant factors to this consideration include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. *Id*. (incorporating the 18 U.S.C. § 3142(g) factors).

3

The third requirement focuses on the § 3553(a) factors, which include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

A defendant who seeks compassionate release under 18 U.S.C. § 3582(c) bears the burden of establishing that such relief is warranted. *See, e.g., United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F.Supp.3d 784, 787 (W.D. Mo 2019).

**Amendment 821**

Amendment 821 to the Sentencing Guidelines became effective in November 2023 and applies retroactively. Part A of Amendment 821 decreases status points by one point for defendants with seven or more criminal history points and eliminates status points for defendants with six or fewer criminal history points. Status points are only applicable if the defendant committed the underlying federal offense while on probation, parole, supervised release, imprisonment, work release, or escape status. Part B of Amendment 821 provides for a decrease of two offense levels for zero-point offenders with no criminal history points, whose offense did not involve specific aggravating factors. *United States v. Burton*, No. 4:21-CR-39-1, 2024 WL 4981093, at *1 (W.D. Ky. Dec. 4, 2024).

## DISCUSSION

The Court finds that none of Hill's health problems – including sickle cell anemia and obesity – qualify as a "serious physical or medical condition … that substantially diminishes the

4

ability of the defendant to provide self-care within the environment of a correctional facility…" U.S.S.G. § 1B1.13(b)(1)(B). These health problems are conditions that the BOP routinely treat and manage. The BOP simply has the ability to provide appropriate care to Hill. Even factoring in COVID-19, the guidelines require an ongoing outbreak in the facility or ongoing public health emergency and an increased risk of severe complications that cannot be timely mitigated. *Id*. According to the last available data from the BOP dated January 21, 2025, Tallahassee FCI had zero open COVID-19 cases out of 1,205 inmates.[1] The Centers for Disease Control estimates that, as of August 5, 2025, despite COVID-19 infections growing, weekly percentage of ED visits diagnosed with COVID-19 in Florda is low.[2] And even if Hill has an increased risk of severe complications from COVID-19, she has not shown that such complications cannot be timely mitigated. Hill's health conditions and COVID-19 risks do not rise to the level of "extraordinary and compelling" under § 3582(c)(1)(A). Moreover, Hill cites harsh prison conditions and frequent lockdowns due to COVID-19 and staffing shortages. While the Court acknowledges the perils of incarceration, these conditions affect all inmates and do not qualify as an extraordinary and compelling circumstance justifying individual relief for Hill.

The Court also finds that the alleged inability of her mother to provide care for her daughter due to mental illness and financial distress does not represent an "extraordinary and compelling reason" under § 3582(c)(1)(a)(i). No evidence of incapacity, expert medical opinion, or financial status has been submitted to the Court. Hill's mere assertions that her mother as well as the caregivers of her other children are overwhelmed and in poor health do not satisfy the burden of demonstrating a compelling or extraordinary need for release. *See, e.g., United States v. Robertson*,

---

[1] BOP Statistics: Inmate COVID-19 (last visited August 11, 2025). It appears that the BOP is no longer updating inmate COVID-19 data as of January 21, 2025. [https://perma.cc/GAS4-TAET]

[2] Current Epidemic Trends (Based on Rt) for States | CFA: Modeling and Forecasting | CDC (last visited August 11, 2025). [https://www.cdc.gov/cfa-modeling-and-forecasting/rt-estimates/index.html]

No. 6:19-CR-00030-P-BU, 2023 WL 2065051, at *2 (N.D. Tex. Feb. 16, 2023).

Additionally, the Court will note that Hill's sickle cell anemia and the custodial arrangements for her children were known and factored into consideration at the time of sentencing, as reflected in the final presentence investigation report and sentencing recommendation of April 2022. The Court imposed a sentence with a substantial downward variance below the guideline range. Specifically, the guideline range recommended a prison sentence from 360 months to life, but the Court imposed a prison sentence of only 132 months.

Hill also asks the Court to consider her extensive rehabilitation efforts, including obtaining her GED since being confined and enrolling in a course to obtain a CDL license. She plans to pursue a degree in business administration. While the Court commends Hill's personal development, rehabilitation alone is insufficient to warrant relief and may only be considered in combination with other compelling factors. 28 U.S.C. § 994(t); *United States v. DeFoggi*, No. 22-2327, 2023 WL 4112142, at *2 (8th Cir. June 22, 2023). Even considering the totality, Hill's circumstances do not rise to the level of extraordinary and compelling to warrant relief.

The second and third requirements focus on the nature and circumstances of the offense, the history and characteristics of the defendant, and community safety. These factors weigh against early release here. Despite Hill's BOP records and PATTERN assessment (Doc. 217) demonstrating good behavior and a low risk of recidivism, the § 3553(a) sentencing factors foreclose the possibility of early release. The sentence imposed reflects the seriousness of the offense and provides just punishment and deterrence to criminal conduct. Hill played a critical role in the offense, recruiting another individual into the conspiracy and acting as the getaway driver. She knew that Co-Defendant Demario Hunter possessed a firearm and would use it at least as intimidation to carry out the planned carjacking. Consequently, Hill aided Hunter in a devastating

6

crime that resulted in death. As such, the sentence imposed by the Court is well grounded. Hill presents no new material facts that would change the balancing of these factors since the time of sentencing. Considering these factors and the fact that Hill can be adequately cared for by the BOP, early release is not warranted. The Court continues to believe that Hill's sentence is fair and just punishment and that her continued incarceration affords adequate deterrence to criminal conduct.

With respect to Hill's Amendment 821 motion, she does not qualify for relief. Part A of Amendment 821 does not apply to Hill because no status points were factored into her sentence. Part B does not apply because Hill is not a zero-point offender, and the underlying offense resulted in death.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's pro se motion for sentence reduction and compassionate release (Doc. 208) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's pro se motion for relief relating to Amendment 821 (Doc. 213) **DENIED**.

Dated this 14th day of August, 2025.

                                             *John A. Ross*
                                             JOHN A. ROSS
                                             UNITED STATES DISTRICT JUDGE